IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SETH NAVRATIL, | |
| Plaintiff, | 8:19-CV-9 |
| vs. | MEMORANDUM AND ORDER |
| MENARD, INC., | |
| Defendant. | |

Plaintiff Seth Navratil is suing defendant Menard, Inc. for premises liability after Navratil slipped and fell at a Menards store in Lincoln, Nebraska.

Presently before the Court is Menards' motion for summary judgment (filing 33) which argues that Navratil cannot prove that Menards had notice of the allegedly dangerous condition, and therefore cannot establish a prima facie claim. For the reasons set forth below, Menards' motion will be granted.

I. BACKGROUND

On the morning of January 15, 2018, Navratil and his co-worker, Cody Lahman, were shopping for supplies at a Menards retail store in Lincoln, Nebraska. Filing 1-1 at 2; filing 35-1 at 4. Shortly after entering the store, Navratil allegedly slipped on one or more foreign substances on the floor near a front aisle. Filing 1-1 at 2-3; filing 35-1 at 5. Lahman, who witnessed the fall, helped Navratil get up, carried him to the front of the store and then transported him to the hospital. Filing 35-2 at 4. When he fell, Navratil broke his tibia and fibula, which required surgery and physical therapy. Filing 1-1 at 2-3.

Neither Lahman nor Navratil recall seeing anything on the floor before Navratil fell. Filing 35-1 at 11; filing 35-2 at 8. Lahman said that as he was helping Navratil up he noticed "how dirty and dusty the floor was." Filing 35-2 at 8. Lahman also returned to Menards about two hours later to document the scene of the fall. Filing 35-2. At that time, Lahman took several photos and videos, including some of his fingertips covered in what he described as "semi-oily" dust and dirt from rubbing the floor where Navratil fell. Filing 35-2 at 7; *see* filing 35-5; filing 35-6. Lahman speculated that the substance had been there from the day before, because he and Navratil had been some of "the first people in the store" that morning. Filing 35-2 at 8-9. But Lahman admitted he had no knowledge of how long the alleged substance had actually been there. Filing 35-2 at 9.

Brittany Warren, an assistant manager on duty at Menards that day, saw Lahman and Navratil as they "limp[ed] towards the wheelchair" at the front of the store. Filing 35-3 at 5. Neither Lahman or Navratil attempted to alert store personnel of the fall, but Warren talked to Navratil as he waited for Lahman to pull his truck up to the door. Filing 35-3 at 5-6. Navratil told Warren he fell and pointed toward the general area of the store, but provided few details. Filing 35-3 at 6. Warren got contact information from Navratil so she could follow up. Filing 35-3 at 6. Warren then inspected the area where she believed Navratil fell, but found no residue or substance, so she didn't request any clean-up. Filing 35-3 at 9, 14.

Later, when Lahman returned to the store, Warren saw him in the area of the fall and approached, asking how Navratil was doing. Filing 35-3 at 7. Lahman explained that Navratil would not be returning to the store that day, so Warren asked Lahman to finish the accident report in his place. Filing 35-3

at 7. Warren still didn't see anything on the floor where Navratil fell, and did not request any clean-up in the area. Filing 35-3 at 14-15.

Warren testified that the overnight cleaning crew was there the night before Navratil's fall—she had let them out of the building when she arrived early the morning of January 15. Filing 35-3 at 15. Warren also walked the entire store that morning to make sure the floors were clear. Filing 35-3 at 15-16. And while Warren can't recall specifically walking down the aisle where Navratil fell after the morning crew stocked it, she said "that's my constant—while they're there. And that's a main aisle that I walk down." Filing 35-3 at 16. Finally, Warren hadn't received any reports from other customers that the floor was slippery. Filing 35-3 at 14.

Navratil sued Menards for premises liability, alleging that it knew or should have known of the unsafe condition of the floor and failed to warn Navratil of the condition or make it safe. Filing 1-1 at 4-5.

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and

the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC,* 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson,* 643 F.3d at 1042.

## III. DISCUSSION

In Nebraska, an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the lawful visitor proves (1) that the owner or occupier either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) that the owner or occupier should have expected that the visitor either would not discover or realize the danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor. *Edwards v. Hy-Vee, Inc.,* 883 N.W. 2d 40, 43 (Neb. 2016).

The parties focus their arguments on whether Navratil can prove the first element—that Menards created, knew of, or should have discovered the

alleged slippery floor. *See* filing 34 at 7-8; filing 44 at 5. And Navratil admits having no evidence that Menards either created or actually knew of the condition. *See* filing 44 at 5. So his claim relies on proving constructive knowledge—that Menards should have known about the floor's condition through the exercise of reasonable care.

In order for a defendant to have constructive notice of a condition, the condition must be visible and apparent and it must exist for a sufficient length of time prior to an accident to permit a defendant or the defendant's employees to discover and remedy it. *Edwards*, 883 N.W.2d at 45; *Cloonan v. Food-4-Less, Inc.*, 529 N.W.2d 759, 763 (Neb. 1995). In the absence of evidence to support an inference of the possessor's actual or constructive knowledge of the hazardous condition, the Nebraska Supreme Court has affirmed summary judgment and refused to allow the jury to speculate as to the possessor's negligence. *Edwards,* 883 N.W.2d at 45; *Range v. Abbott Sports Complex*, 691 N.W.2d 525 (Neb. 2005); *Cloonan,* 529 N.W.2d at 764. Inferences based upon guess or speculation do not create material issues of fact for purposes of summary judgment. *Edwards,* 883 N.W.2d at 45; *Range,* 691 N.W.2d at 531.

Menards argues that (1) even if the slippery substance existed (which it disputes), it was not visible and apparent, and (2) Navratil cannot prove how long the alleged substance was on the floor before he fell. Filing 34 at 8. So, Menards reasons, there is no genuine dispute of material fact and it is entitled to judgment as a matter of law. *Id.* The Court agrees.

To establish that the substance was visible and apparent, Navratil relies on the following statements made by Lahman during his deposition:

> Q: Okay. While you were there with Mr. Navratil at the store at approximately 7:30 in the morning that — were you able to ascertain what he had slipped on?

> A: I remember him just, like, screaming in pain, so I knew he wanted to get out of there.
>
> Q: Uh-huh.
>
> A: But what I — what I had done was just sliding my boot across the ground, and it seemed like it could have had some sort of oil-based substance [—] or slick substance, we'll say, because I — I mean, I couldn't tell what — what was there. So . . .
>
> Q: Yeah. You weren't able to tell what it was that he had slipped on, what — is that correct?
>
> A: No at — well, I could tell the floor was dirty.
>
> Q: Okay. And so, I mean, did you see some dirt and some dust? Is that what you're referring to?
>
> A: Yeah.

[Filing 45-2 at 3](). Lahman was also asked about a written statement he prepared after the accident:

> Q: . . . [S]tarting with the first sentence, "From what I recall, Seth and I walked into Menards at 7:30 a.m. on January 15th, 2018, to get supplies for a job." Did I read that correctly?
>
> A: Yes.
>
> Q: Okay. "Everything seemed fine until Seth fell to the ground in front of me." Did I read that correctly?
>
> A: Yes.
>
> Q: And is that consistent with your recollection that you didn't see anything before the accident that caused you any concern that there was anything he was going to fall on?
>
> A: Yes.

> Q: Okay. . . . [I]n the next sentence, pardon me, it says, "As I saw him lying there, I noticed how dirty and dusty the floor was from the weekend before." Do you see where I read that?
>
> A: Yes.
>
> . . .
>
> Q: Okay. "Later I went back to Menards at 9 a.m. The floor still hadn't been cleaned, so I swiped my boot carefully across the ground and it was slick." Do you see where I read that?
>
> A: Yes.
>
> . . .
>
> Q: And as far as you said you had to — you wiped your boot across the ground and it was slick, fair to say that you weren't able to see anything that indicated it was slick? It was from your boot rubbing against the ground; correct?
>
> A: Yes. Yep.

Filing 45-2 at 4-5; *see* filing 45-2 at 6.

The very evidence that Navratil relies on, however, shows that the alleged slippery substance was *not* visible and apparent. Both times Lahman checked for the slick substance he had to slide his boot across the floor because he could not "tell what was there," or "see anything that indicated it was slick." And Warren's testimony is consistent with Lahman's—she said that both times she inspected the area she could not find anything that she thought needed to be cleaned up. Finally, Navratil himself said that he didn't recall seeing anything on the floor before he fell.

While Lahman's testimony *might* establish a question of fact concerning whether the floor was actually slick, the relevant question is whether the

slickness was visible and apparent such that Menards should have known of the danger. The undisputed evidence also shows the cleaning crew was there the night before, that Warren walked the store that morning, and that no customers had reported a slippery substance. And the record is clear—no one, including Lahman, was able to see any slick substance.

To the extent that Navratil relies on Lahman's observation that the floor was "dusty and dirty," that evidence alone is insufficient to establish Menards had constructive notice of a *dangerous* condition. *See Cloonan*, 529 N.W.2d at 763 (holding that winter sidewalks that were either salted or cleared, but remained wet, were not dangerous). Navratil presents no authority that suggests that dust and dirt on the floor of a large commercial retailer is, by itself, dangerous. Menards is a home improvement store, and, even with regular cleaning, the floor will inevitably have some dust and dirt accumulation. Navratil also alleges that he slipped on "dirt or heavy dust mixed with a soap-like substance," not dirt and dust alone. Filing 35-4 at 2. But as explained above, the evidence shows the alleged soap-like substance was not visible. Navratil offers a mere scintilla of evidence that cannot carry the weight of his claim and could not reasonably lead a jury to find negligence on the part of Menards. *See Barber* 656 F.3d at 791-92.

Menards "is not required to see what cannot be seen by other human beings." *See Cloonan*, 529 N.W.2d at 763. Navratil simply cannot prove that the alleged dangerous condition was visible and apparent, and for that reason alone, for Navratil's claim fails as a matter of law. *See Id*.

But for the sake of completeness, the Court also notes that there is no evidence of how long the alleged slippery substance was present on the floor. Navratil suggests that because the substance "was seemingly covered in dirt and dust," a reasonable juror could infer that it was there for some time. Filing

44 at 8. But the Nebraska Supreme Court has held time and again that where a plaintiff produces no evidence of how long the dangerous condition existed, that a plaintiff's claim must fail as a matter of law. *See Edwards,* 883 N.W.2d at 45; *Herrera,* 655 N.W.2d at 383; *Chelberg v. Guitars & Cadillacs, Inc.*, 572 N.W.2d 356, 360-61 (Neb. 1998); *Richardson v. Ames Ave. Corp.*, 525 N.W.2d 212, 217-18 (Neb. 1995). Perhaps the presence of dirt and dust indicates the alleged substance had been there for several hours or days, but it is also possible that the dirt and dust was deposited by employees or customers shortly before Navratil fell—and that possibility precludes Navratil's claim from proceeding.

Navratil also suggests that he is entitled to an adverse inference that the substance was visible and apparent because Menards is guilty of spoliation. The Court is not persuaded by this argument. Federal law applies to the imposition of sanctions for spoliation of evidence in diversity cases. *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012). And in the Eighth Circuit, there must be a finding of intentional destruction of evidence indicating a desire to suppress the truth in order to receive an adverse inference instruction. *Id.*; *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004). When a routine document retention policy has been followed, there must be some indication of an intent to destroy the evidence for the purpose of obstructing or suppressing the truth in order to impose the sanction of an adverse inference instruction. *Stevenson,* 354 F.3d at 747.

Here, Navratil suggests that Warren and Menards intentionally destroyed video evidence of Warren inspecting the area where Navratil fell immediately after he left the store, Warren inspecting the area again when Lahman returned later that morning, no one being ordered to clean up the area (i.e. a lack of clean-up), and Warren completing the morning store inspection

alone, without a member of the cleaning crew. Navratil's arguments are without merit.

At the time of Navratil's fall, Menards routine policy was to retain the following video: (1) the customer walking into the store, (2) the incident, (3) the customer filling out the incident report, and (4) the customer exiting the store. Filing 44 at 10; *see* filing 46-4. Menards retained and provided Navratil with the video footage specified in the policy, except for footage of Lahman filling out the incident report when he returned to the store. *See* filing 44 at 10-11; filing 45-3 at 11-12. Navratil contends that Menards should have kept and produced that video in addition to the footage listed above.

Navratil relies on *Stevenson*, where the Eighth Circuit held that despite following its standard retention policy, the defendant railroad acted in bad faith by destroying voice recordings in that particular case. 354 F.3d at 747-48. The Eighth Circuit explained that "while this case tests the limits of what we are able to uphold as a bad faith determination," the district court had not abused its discretion in sanctioning the railroad for spoliation. *Id*. The court reasoned that the railroad knew the recordings would be important in litigation over accidents, and that litigation was frequent in cases where accidents involved serious injury or death. *Id*. at 748. But the court categorized those factors as "general considerations," which in that case were overshadowed by the fact that the voice tapes were the only contemporaneous recordings of the railroad employees at the time of an accident, and that the railroad was careful to preserve voice tape when it was beneficial to its defense. *Id*. It is these last factors, which the Eighth Circuit found especially important in its determination to affirm sanctions against the railroad, that make *Stevenson* distinguishable from the present case.

Navratil asserts that the video footage destroyed by Menards is similarly "the only contemporaneous recordings of Menards' or Mr. Navratil's actions shortly before and/or after Mr. Navratil's fall." Filing 44 at 12. The Court finds this argument unpersuasive. Navratil admits that he was provided with video footage of him and Lahman entering the store, his fall, and him and Lahman exiting the store. *See* filing 44 at 13. Therefore, unlike *Stevenson*, where all of the voice recordings were destroyed, Navratil received contemporaneous recordings of the state of the floor immediately before and after he fell. And there is absolutely no evidence that Menards has a practice of keeping video that is helpful to it while destroying video it finds to be harmful.

Navratil also insinuates that the video recordings destroyed by Menards would settle whether the substance was visible and apparent to Warren when she conducted her early morning walk through, inspected the area after Navratil fell, and inspected the area when Lahman returned to the store. But the evidence in the record, as discussed in detail above, already settles that question. Navratil, Lahman and Warren all agree that the substance was *not* visible and apparent.

The Eighth Circuit expressly stated that *Stevenson* was a unique case that tested the limits of bad faith determinations. The Court refuses to extend those limits on *these* facts. There is simply no evidence that Menards destroyed video evidence in an attempt to obstruct or suppress the truth, so Navratil's request for an adverse inference instruction is denied.

## IV. CONCLUSION

The mere fact that an injury or accident occurred does not raise a presumption of negligence. *Herrera*, 655 N.W.2d at 383. Taken as a whole, this record could not lead a rational trier of fact to find for Navratil. To permit this case to go before a jury would be to encourage impermissible guess and

speculation; something the Eighth Circuit and Nebraska case law prohibits. Navratil has failed to produce evidence that the substance he allegedly slipped on was visible and apparent and existed for a sufficient length of time prior to his fall to permit Menards employees to discover and remedy it. So, there is no genuine dispute of any material fact and Menards is entitled to judgment as a matter of law.

IT IS ORDERED:

1. Menards' motion for summary judgment (filing 33) is granted.

2. Navratil's complaint is dismissed.

3. Navratil's motion to exclude (filing 37) is denied as moot.

4. A separate judgment will be entered.

Dated this 28th day of February, 2020.

BY THE COURT:

/s/ John M. Gerrard
John M. Gerrard
Chief United States District Judge